WESTERN DISTRICT OF TENNESSEE

RECEIVED

2013 JUN 25  AM 9: 53

Beverly J. Falkner

Plaintiff

v.

Southern Transportation, Inc. DBA Yellow Cab company and

Checker Cab Company and its Owners

Defendants

### Wrongful Dismissal, Harassment & Violation of Labor Law

1. On August 8, 2011, defendant de-authorized plaintiff's terminal in the taxi where plaintiff could not receive trips. Plaintiff called to ask why and defendant stated plaintiff should come in to the office. Upon arrival defendant showed plaintiff two contract vouchers with Lebonheur Hospital that were signed by the customer verifying that plaintiff made the return trip taking the patient back home. Defendant stated that plaintiff could not be paid for those two trips because plaintiff did not get them off the terminal. Those two trips combined amount to $111.00 and are paid for by government grants. The initial contact for taxi service is made by that patients Social Worker. At that time the trip is paid for in full for roundtrip. A supervisor had previously paid the plaintiff for these trips because he could see in the system that plaintiff had ran the trips and I had signed documentation. Plaintiff received payment of $105.45 because defendant deducts five percent because they are company contracts . A bond account must be maintained in the amount of $200.00. Defendant deducted $111.00 from my bond account, taking the five percent again. Defendant fired plaintiff for doing what plaintiff was contracted to do. Page 8, paragraph 18d of the Independent Contractor Agreement and Page 18 and 19, section titled Charge Tickets/Contracts of the Guideline For Taxi Drivers manual, issued by the defendant, clearly states that plaintiff was only doing what plaintiff had been trained and contracted to do. No write ups. No customer complaints.
2. On August 8, 2011, plaintiff requested a separation document at time of dismissal. Defendant stated plaintiff could not have a separation document because plaintiff is not an employee. On August 26, 2011, after speaking with the Department of Human Services, plaintiff telephoned defendant, stating plaintiff needed separation document to receive food stamps. Again defendant stated no because you are not an employee. This jeopardized plaintiff's health.
3. On August 30, 2011, Plaintiff met with her Social Worker at the VA Hospital. Social Worker scheduled an appointment with a psychologist for therapy regarding plaintiff's dismissal. Therapist scheduled appointment for physical. Therapy is now ongoing.
4. April 1, 2011, Defendant refused to accept plaintiff's money for lease fee, charged the $5.00 administrative fee that is charged when a driver cannot pay all of their fee for that day and took an additional $24.00 out of my bond account for that day. It was Friday. Defendant placed plaintiff on no driver for that weekend. Plaintiff lost money because the first weekend of the

BF  Paragraph 1 and 2- Defendant, Lyle Bopree, Operations Manager
BF  Paragraph 4, Defendant, Dispatch Supervisor

month is one of the busiest times for taxi drivers. Plaintiff requested small compensation amounting to $30.00 per day for that Saturday and Sunday because there was no reason to place plaintiff on no drive. No Response.

5. On April 13, 2011, defendant called City of Memphis Police because plaintiff asked for a receipt for lease fees paid on that day. Two officers were dispatched. Plaintiff must use receipts to file income tax. This receipt was never issued to plaintiff. See Page 8, para 18c of contract and Page 27 of Guidelines for Taxi Drivers.

6. Page 1, para 3A, reference Schedule A, Page 10 of contract. Page 4, para 8 reference Schedule B, Page 11. Contract does not reference Schedule C page 12 where fees are doubled. Effective date and revised date are the same on all three fee schedules. Fees were increased again on August 1, 2011. According to Page 8, para 21 of the contract, all changes to the contract should be made in writing and signed by the defendant and plaintiff.

7. On March 4, 2011, plaintiff signed a contract with defendant. At that time, plaintiff was under the impression that a copy would be at plaintiffs disposal. Plaintiff requested a copy and defendant stated the contract was kept in the file and plaintiff could not have a copy. On March 22, 2011, plaintiff asked defendant if she could just sit and read the contract because plaintiff did not take the time to do so at time of signing. Defendant stated he would leave plaintiff a copy that day. Defendant did not leave copy. On April 12, 2011, plaintiff asked again and defendant gave plaintiff a copy of the contract.

*BF* 8. No disclosures were offered plaintiff for signature regarding cameras in taxi. This was invasion of plaintiff's privacy and could have been used as entrapment.

9. Grievance filed April 4, 2011, addressing concerns of harassment by staff. No response.

10. During plaintiff's initial interview with defendant it was stated that the normal time frame for a driver to acquire SINGLE status(Keep their taxi 24/7) is 6 weeks, no exceptions, provided that driver meets the necessary requirements. Plaintiff had SINGLE status at another company prior to contracting with defendant. The 6 weeks were up and all requirements were meet by the Plaintiff on April 13, 2011, which is the same day defendant called the police and stated plaintiff needed more training. Plaintiff did not receive single status for 12 weeks.

11. On June 20, 2011, a message came across the terminal several times asking for help with a trip in Millington. Plaintiff was in East Memphis near Quince & Kirby. Plaintiff bidded on the trip to let the defendant know I was headed to Millington. Defendant could tell by the GPS Tracker. Plaintiff continued to bid and the trip came into plaintiffs terminal. Immediately a message came from dispatch stating "another driver has this trip." Plaintiff continued as the address was just around the corner and another driver was leaving with that customer. Plaintiff then called the defendant and defendant stated, "he's a new driver, we're helping him out." The next day plaintiff asked if she could be compensated in some way with gas, anything, because it was her trip, defendant asked for help, plaintiff responded. This took approximately 2 hours of the plaintiffs time round trip. Defendant again stated he was helping a new driver out and plaintiff could not receive any compensation.

12. The Memphis area for the taxi terminal is divided into zones. On more that one occasion plaintiff had found zones that are incorrect on the zone sheet issued to plaintiff for the purpose of finding the location of the customer. Plaintiff had also found zones that were not even on

*BF* Paragraph 5, Defendant, Dispatch Supervisor, white male
*BF* Paragraph 7, 10, and 11, Defendant, Lyle Bopree, Operations Manager
*BF* Dispatch Supervisor, Paragraph 4 and 5, either resigned or was terminated after paragraph 5. I can't remember his name. Info for clarity.

the zone sheet. Plaintiff had gotten trips because plaintiff would ride and explore when business was slow and as those zones came in that were not on the list, plaintiff would add them to her own list. As of August 8, 2011, no corrections or additions of zones had been made since plaintiff's date of employment.

*BF* ~~Plaintiff has concrete documentation for 90% of all allegations upon request.~~

Three attempts to settle with defendant in writing. No response.

*BF* Plaintiff prays for a judgment for compensatory damages amounting to ~~$21,221,221.21, (twenty-one million, two hundred twenty-one thousand, two hundred twenty-one dollars and twenty one cents,~~ that determined by US District Court, Western District of Tennessee. Plaintiff will accept installment payment plan for any remaining balance through the Court.

Respectfully Submitted,

*Beverly D. Falkner*

~~6875 Hickory Lake Cv~~ 3375 Winbrook Dr. *BF*

Memphis, TN ~~38119~~ → 38116

~~Friday, September 09, 2011~~ (901) 346-1115
*BF* September 9, 2011    *BF*
~~(901) 649-4888~~    ~~June 24, 2013~~
September *BF*

*BF* All backup information available in Scan and on Docket under Number 11-2778-JDT for this complaint, I do not have funds to print information stored under this number.